Daniel F. López–Romo, U.S. Atty., and Rosa Emilia Rodríguez, Asst. U.S. Atty., Hato Rey, P.R., for plaintiff.

Teodoro, Méndez, Santurce, P.R., for defendants.

**UNITED STATES of America, Plaintiff,**

v.

**Fernando FACCIO–LABOY (count one), Hector William Ortiz–Rosado (count one), John Antonio Casillas, aka "Tony" aka Shorty (counts one and three), Victor Torres aka Angel Torres–Marrero (counts one and two), Jose E. Bonilla–Martinez (count one), Julio Antonio Maldonado–Camejo True Name: Tulio Maldonado–Camejo (count one), Defendants.**

**Crim. No. 90–0314CCC.**

United States District Court,
D. Puerto Rico.

July 3, 1991.

### ORDER

CEREZO, District Judge.

This action is before us on defendant Fernando Faccio–Laboy's Motion to Suppress filed on February 25, 1991 which was opposed by the government on March 8, 1991. In his Report and Recommendation of April 25, 1991 (docket entry 84), the Magistrate recommended that items seized during the challenged "inventory" search be suppressed. The government appealed, and, upon review, we requested the transcript of the suppression hearing, and whatever the government considered to be the appropriate pages from the DEA manual, so that the court could determine if the search was actually performed for inventory purposes, as claimed, or if this was merely a pretext to search for evidence.

In response to our Order the government submitted pages 370 through 372, and 435 through 438 of the Drug Enforcement Administration Manual.

The manual states the following with regard to the inventory search of seized vehicles:

> D. Upon seizing the conveyance, it must be thoroughly searched, including opening all containers within the conveyance, to inventory its' contents. This search need not be contemporaneous with an arrest, and no search warrant is needed. All articles not part of the con-

---

**23.** This figure is 20% of $398,226.84—the total amount paid by the insurance company for the loss of the Wishing Star's hull.

veyance and not having evidentiary value, or not subject to separate forfeiture action, will be removed and returned to the owner without delay (see 6663.63). Accessories, jacks, and standard maintenance tools are considered part of the conveyance. Installed radios, tape players, etc., are also part of the conveyance. Tapes found in a tape player are part of the conveyance, but loose tapes are not.

Sections 6654.24 Conveyances (D).

As is evident from the text, the manual gives a broad scope to the search.

By contrast, *Section 6663.63* of the Manual concerning articles taken into custody for safekeeping describes the procedure for inventory of articles taken from arrestees or at a search location:

C. To protect DEA against any subsequent claims regarding lost or missing property, all property taken into custody for safekeeping will be thoroughly inventoried, including opening locked containers to inventory their contents. All property will be itemized and receipted on a DEA Form 12 (or as a separate category on the search warrant inventory) with the notation "taken for safekeeping subject to return to the lawful owner." If the lawful owner is not present, a copy of DEA Form 12 (or the search warrant) will be left on the premises.

The transcript of Agent Justice's testimony at the suppression hearing reveals the following about the search he conducted.

BY MS. RODRIGUEZ:

Q You say you seized this car pursuant to the arrest where the transaction took place. Did you, in effect, carry out an inventory search of that car, sir?

A Yes, I did.

Q And was it done according to routine Drug Enforcement Administration procedure?

A Yes, it was.

Q Would you tell the Court what did you do when you searched it?

A We *completely and thoroughly searched the interior of the car; the trunk; everything concerning the car.* This is done for several reasons—

MR. MENDEZ: Excuse me. Your Honor, I object as to any other case. I'd rather believe that he should testify as to what happened in this case, in this particular case.

THE COURT: All right. Just tell us what you did?

THE WITNESS: I completed a thorough search of the vehicle.

(Emphasis ours.) TR at pp. 7–8.

Q You say you searched the car also for protection, you said?

A Yes.

Q What do you mean by that sir?

A It has been established oftentimes that people attend negotiations for narcotics, especially at the culmination of narcotics transactions where money is actually going to be exchanged for drugs, with guns. They are armed when they attend these things.

For the protection of other officers, as well as the protection of people on the street, these inventory searches and searches of vehicles that belong to Defendants is carried out, so that we can find any kind of firearms or dangerous devices that may be hidden inside the car.

TR at pp. 9–10.

Q Did you do an inventory, itemized list, of the items you found—

A No.

Q —in the car?

A No.

Q But it is a fact that you still keep the—

MR. MENDEZ: Your Honor, we have objects to that. I know that Rules of Evidence don't apply but she's almost testifying.

THE COURT: Wait a second.

MS. RODRIGUEZ: I will rephrase the question, Your Honor.

BY MS. RODRIGUEZ:

Q What did you do after that with the car, sir, if you did anything?

A After it was parked in the lot, ma'am?

Q Yes.

A   An inventory search of the vehicle was taken and down, a very thorough search of the inside of the car. The documents were seized. The vehicle was made subject to forfeiture under 881, Title 21 881, and documents relative to that seizure were executed.

. . . .

THE COURT: *Now, when you make a routine inventory search do you usually itemize and prepare an inventory list or no?*

THE WITNESS: *No.*

THE COURT: So, there's no inventory taken of an inventory search?

THE WITNESS: The items that I took out of the car were basically a very wide range of business documents and some cellular telephone equipment, which I intend to give back.

THE COURT: And there's no list of those things anywhere?

THE WITNESS: *But there's no list of those things, individually, that was prepared.*

THE COURT: But you still call it an inventory list and an inventory search, right?

THE WITNESS: Right.

. . . .

MR. MENDEZ:

Q   And you did not make a list or any kind of inventory of what you found in that car?

A   There was no list made.

Q   So, what you have called an inventory is actually a search?

A   I made an inventory search, sir.

Q   But you didn't inventory—what's your definition of inventory?

THE COURT: That's argumentative. They may call it inventory search. It may or may not be an inventory search. I don't know right now. I just don't know of an inventory search without an inventory or a list. But I may learn something.

BY MR. MENDEZ:

Q   So, in fact, you didn't make any list or you didn't perpetuate in any writing what was found by you in that car?

A   There's no writing. There's no list that I made, no.

Q   Right. And as a matter of fact, there was a briefcase that you opened in order to make your inventory?

(Emphasis ours.) TR at pp. 11–14.

*Webster's Third New International Dictionary* (Unabridged), lists the following definitions of "inventory" within the context of our inquiry:

**1:** an itemized list of current assets: as **a:** a written list or catalog usually made by a fiduciary under oath of the tangible or intangible property of an individual, organization, or estate describing the items or classes of property so as to be identifiable and usually placing a valuation thereon **(b)**(1): a list or schedule ... **(2):** a list. . . .

*Chambers Concise Dictionary* identifies the origin of the word as the late Latin *"invent-rium*—a list of things found."

Thus, it is clear that the essential feature of an inventory is a written list.

Although Section 6654.24(D) of the Manual on inventory searches of seized vehicles refers only to the broad parameters for searching without establishing limits, Section 6663.63(C) of that same manual reveals that it is part of DEA procedure to conduct thorough inventories when property is taken into custody for safekeeping and that such property must be properly itemized and receipted.

The Supreme Court in *Florida v. Wells*, 495 U.S. 1, 110 S.Ct. 1632, 1635, 109 L.Ed.2d 1 (1990), has stated that "Inventory procedures serve to protect an owner's property which is in the custody of the police, to insure against claims of lost, stolen or vandalized property, and to guard the police from danger." It is clear that to fulfill what the Court finds are the purposes of an inventory search, preparation of an inventory sheet is necessary. As stated in *Wells*, "[t]he policy or practice governing inventory searches should be designed to produce an *inventory.*" *Id.*

As noted by the U.S. Magistrate in his report and recommendation the car was located in front of the condominium, the

defendants were arrested inside the building, and no defendant had access to the vehicle. Therefore, the contention that the warrantless search took place as a protective measure is spurious.

As to the possibility that the search of defendant's vehicle and its contents was done to protect the owner's property and to safeguard against claims of lost or stolen property, Agent Justice's testimony clearly reveals that there was never any intention to produce a written list. Accordingly, we find that the search characterized by the government as an "inventory" search was a mere pretext to rummage through the car looking for incriminating evidence without a warrant.

Accordingly, the Magistrate's recommendation is ADOPTED and the evidence seized pursuant to this search is ORDERED suppressed.

SO ORDERED.